# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN MUSIC THEATER FESTIVAL, INC., and JOINT THEATER CENTER, LLC, | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | NO. 10-cv-00638 |
| TD BANK, N.A., | : : | |
| Defendants. | : | |

**MEMORANDUM OF LAW**

**Joyner, J.**                                                            **February 16, 2011**

Presently before the Court is Defendant TD Bank, N.A.'s Motion to Dismiss Plaintiffs' Complaint and to Strike All References to Settlement and Mediation Communications (ECF No. 6). For the following reasons, the Motion shall be converted to a motion for summary judgment under Federal Rule of Civil Procedure 56 in part and ruling shall be reserved in part.

## I.   BACKGROUND

This action arises out of a commercial business relationship between American Music Theater Festival, Inc., and Joint Theater Center, LLC ("Plaintiffs") and TD Bank, N.A., the successor by merger to Commerce Bank/Pennsylvania N.A. (collectively, "Defendant"). In November 2001, Plaintiffs, non-profit entities that operate the Prince Music Theater in Philadelphia, negotiated a $5.3 million tax-exempt loan with Defendant using a mortgage issued against the theater facility as security. Subsequently, in February 2003, Defendant extended a conventional, non-tax

exempt loan to Plaintiffs in the amount of $500,000 — later increased to $928,000 — with the theater property again mortgaged as security.

Following a 2007 incident of check forgery by one of Plaintiffs' employees, disputes arose between the parties and several agreements were negotiated to resolve the ongoing issues. Defendants deny the existence of one of these agreements, while Plaintiffs contend that several other of these agreements are the invalid products of fraud and coercion. On November 11, 2008, after disagreements and apparent misunderstandings concerning the amount due on the monthly payments, Defendant declared Plaintiffs to be in default under the tax-exempt and conventional loans. Confession of judgment was subsequently entered against Plaintiffs on both loans in the Philadelphia Court of Common Pleas: on December 23, 2008, on the conventional loan, and on March 18, 2009, on the tax-exempt loan. In February 2009, Defendant filed related foreclosure actions.

Plaintiffs filed a petition to open the confessed judgment on the conventional loan in March 2009. The Court of Common Pleas denied the petition on August 13, 2009, and Defendant thereafter scheduled a sheriff's sale of the theater facility to take place on October 6, 2009. The Court of Common Pleas granted a stay of execution of the judgment pending disposition of Plaintiffs' appeal of its decision to the Superior Court, which

appeal is still pending.  Plaintiffs allege that despite the stay of the sheriff's sale, Defendant publicly discussed moving forward with such a sale, thereby injuring Plaintiffs' reputation and business.

On January 14, 2010, Plaintiffs commenced this action by filing a complaint against Defendant in the Philadelphia Court of Common Pleas.  Plaintiffs' Complaint asserts the following claims against Defendant:  Breach of Contract/Duty of Good Faith (Count I)[1]; Promissory Estoppel (Count II); Breach of Fiduciary Duty (Count III); Fraudulent Misrepresentation and Concealment (Count IV); Negligent Misrepresentation (Count V); Conversion (Count VI); Breach of Duties Imposed by the Pennsylvania U.C.C. (Count VII); Interference with Charitable Gifts (Count VIII); Interference with Business Relations (Count IX); and Abuse of Process (Count X).

Defendant removed the case to this Court and filed the instant Motion to Dismiss on March 5, 2010.[2]  Plaintiffs filed a response in opposition.  Defendant then filed a supplemental brief — to which Plaintiffs replied — followed by a second

---

[1] Pages 47 and 48 of Plaintiffs' Complaint are missing from the copies of the Complaint uploaded by Defendant as attachments to its Notice of Removal (ECF No. 1) and Motion to Dismiss (ECF No. 6).  It does not appear that a complete version of the Complaint is available on the docket.  Therefore, the Court's only knowledge of Plaintiffs' first count comes from Defendant's memorandum supporting its motion to dismiss.

[2] The action was reassigned to this Court on September 23, 2010.  (ECF No. 17.)

supplemental brief. Defendant's supplemental briefs attached decisions of the Court of Common Pleas that were issued following Defendant's filing of its Motion to Dismiss.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion to dismiss, a district court must "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010) (citing Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). However, to survive a motion to dismiss, it is not sufficient merely to recite the elements of the cause of action; rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "'This does not impose a probability requirement

at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) (quoting Phillips, 515 F.3d at 234) (internal quotation marks omitted). In making this determination, the district court must consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon those documents." Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

**III. ANALYSIS**

    **A.**    **Rooker-Feldman Doctrine[3]**

As a threshold matter, Defendant argues that pursuant to the Rooker-Feldman doctrine, "this Court should not grant relief that would 'require the District Court to find that the state court's legal and factual determinations are erroneous, and thereby render [those] judgment[s] ineffectual.'" (Def.'s Supl. Mem. Supp. Mot. to Dismiss 2, ECF No. 12 (quoting Parks v. Twp. of Portage, No. 10-1938, 2010 U.S. App. LEXIS 13196, at *9 (3d Cir. June 28, 2010)).) As the state courts have now ruled in favor of

---

[3] This doctrine takes its name from two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

5

Defendant in its four collection cases, Defendant argues that if this Court were to rule in favor of Plaintiffs, we would be finding those state court decisions to be erroneous and rendering those judgments ineffectual. (Id.)

Plaintiffs respond that the Rooker-Feldman doctrine is inapplicable in this case. (Pls.' Resp. to Def.'s Supl. Mem. 1-2, ECF No. 13.) We agree.

The Rooker-Feldman doctrine holds that "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165 (3d Cir. 2010). Until recently, federal courts have often broadly applied this doctrine to bar federal review of claims that had been previously litigated in state court. See, e.g., Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir. 2003) (holding that "a claim is barred by Rooker-Feldman . . . if the claim was actually litigated in state court prior to the filing of the federal action" (internal quotation marks omitted)). However, in a 2005 decision, Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Supreme Court clarified that "[t]he Rooker-Feldman doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and

rejection of those judgments." Id. at 284.  If a case has been previously litigated in state court, a district court nonetheless maintains jurisdiction as long as the "federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'" Id. at 293 (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).

Following Exxon Mobil, the Third Circuit Court of Appeals reassessed its Rooker-Feldman jurisprudence and articulated a new standard.  In line with the Supreme Court's mandate that the doctrine is to be construed narrowly, the Third Circuit has held that Rooker-Feldman applies only if four requirements are met: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.  Great W. Mining, 615 F.3d at 166 (quoting Exxon Mobil, 544 U.S. at 284).

Here, prior to Plaintiffs' filing of its federal suit, confessions of judgment were entered against Plaintiffs (the state-court defendants) in the Court of Common Pleas on the conventional and tax-exempt loans on December 23, 2008, and March 18, 2009, respectively.  (Compl. ¶¶ 212, 225.)  Plaintiffs' petition to open the confessed judgment on the conventional loan

7

was denied by that court on August 13, 2009. (Id. ¶ 252.) Therefore, as two judgments were rendered against Plaintiffs in state court prior to the filing of the federal lawsuit, the first and third Rooker-Feldman requirements are satisfied.[4]

However, the second and fourth requirements have not been met. Plaintiffs are neither complaining of injuries caused by the state-court judgments nor inviting this Court to review and reject those judgments. "[W]hen the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." Great W. Mining, 615 F.3d at 167. "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." Id.

The majority of Plaintiffs' claims are based upon Defendant's actions in the years preceding the state-court litigation. See Great W. Mining, 615 F.3d at 173 ("The fact that Defendants' actions, rather than the state-court judgments, were the source of Great Western's injuries, is alone sufficient to make Rooker-Feldman inapplicable here."). Counts I through VII

---

[4] Although Defendant (the state-court plaintiff) also filed foreclosure actions in state court, no judgments had been entered at the time that Plaintiffs filed their federal Complaint in January 2010. (Id. ¶¶ 221, 224.) Judgments were subsequently entered in Defendant's favor in both foreclosure actions.

8

assert claims that quite clearly are based upon Defendant's actions pre-dating the state-court litigation. As Defendant notes in its Motion to Dismiss:

> All of Counts VI and VII, which derive from the Bank allegedly cashing forged checks in September 2007 (caused by a crime by an inadequately supervised Prince employee) rest upon alleged misconduct prior to April 3, 2008 and August 29, 2009. Likewise, most (if not all) of Counts I, II, III, IV, V, and VIII derive from and relate back to an alleged January 31, 2008 Agreement between the Prince and the Bank to remedy the alleged forged check incident in the fall of 2007.

(Def.'s Mem. Supp. Mot. to Dismiss 11, ECF No. 6.) Rooker-Feldman, then, cannot apply to these claims.

There is a closer question with regard to Plaintiffs' claims of Interference with Charitable Gifts (Count VII), Interference with Business Relations (Count IX), and Abuse of Process (Count X).[5] Each of these claims is based, at least in part, on Defendant's alleged wrongful actions in confessing judgment and publishing within the nonprofit community that the theater would be seized and sold despite a stay of execution. (See Compl. ¶¶ 336-37, 342-43, 349-51.) The Third Circuit has noted that although the cause-of-injury test is "seemingly straightforward, application becomes more complicated when a federal plaintiff complains of an injury that is in some fashion related to a state-court proceeding." Great W. Mining, 615 F.3d at 167. "The

---

[5] We address these claims only in the context of Rooker-Feldman and do not consider at this time whether these counts state viable claims for the purpose of Rule 12(b)(6).

critical task is thus to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Id. (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)). Having reviewed the Complaint as a whole, we find that these claims narrowly escape the Rooker-Feldman bar. Plaintiffs' claims appear to identify Defendant's litigation decisions and tactics — as opposed to the resulting state-court judgments — as the sources of Plaintiffs' injuries. As such, Rooker-Feldman cannot apply.

Moreover, although Plaintiffs ask this Court to reach legal conclusions contrary to those reached by the state courts, Plaintiffs are not seeking to have any state-court judgments undone. See Great W. Mining, 615 F.3d at 173 ("A finding by the District Court that state-court decisions were erroneous and thus injured Great Western would not result in overruling the judgments of the Pennsylvania Courts."). Indeed, Plaintiffs state:

> Notably, the Prince does not seek in this action to avoid any foreclosure or execution on its real property or otherwise seek the "equivalent of an appellate review of [the state court] order[s]." The Prince is not asking this Court to rule that TD Bank cannot foreclose or execute on the Prince's real property; the Prince is presently pursuing appeals to the Superior Court seeking that relief. Rather, in this action, the Prince seeks damages for TD Bank's malfeasance and misfeasance in its action leading up to and subsequent to its efforts to

10

seize the Prince's property.

(Pls.' Resp. to Def.'s Supl. Mem. 2-3, ECF No. 13 (internal citation omitted).) Plaintiffs' characterization of its lawsuit is consistent with our reading of the Complaint. Accordingly, we find that Plaintiffs' claims are independent and do not trigger the Rooker-Feldman bar.

### B. Preclusion Doctrines

The determination that Rooker-Feldman does not present a jurisdictional bar to our review of Plaintiffs' claims, however, does not end our inquiry. "As a final step, should the Rooker-Feldman doctrine not apply such that the district court has jurisdiction, '[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.'" Great W. Mining, 615 F.3d at 170 (quoting Exxon Mobil, 544 U.S. at 293). Federal courts "give the same preclusive effect to a state-court judgment as another court of that State would give." Exxon Mobil, 544 U.S. at 293. Therefore, in conducting our preclusion analysis, we would look to Pennsylvania preclusion law.

Preclusion is not jurisdictional and, as an affirmative defense, is not waived through failure to include it in a motion to dismiss. Exxon Mobil, 544 U.S. at 293; Great W. Mining, 615

11

F.3d at 173; Fed. R. Civ. P. 8(c), 12(h).[6] Addressing an affirmative defense on a Rule 12(b)(6) motion to dismiss, however, is a tricky business. In the Third Circuit, "an affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (emphasis omitted); see also Brody v.

---

[6] Defendant raised preclusion as a defense for the first time in its supplemental brief. (Def.'s Supl. Mem. Supp. Mot. to Dismiss 2-3, ECF No. 12). Plaintiffs object to Defendant's filing of the supplemental brief as a violation of Rule 12(g)(2), which provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). To the extent that Plaintiffs object to Defendant's Rooker-Feldman arguments, those objections are overruled because we have an independent obligation to determine whether subject-matter jurisdiction exists. Great W. Mining, 615 F.3d at 163 (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006)).
　　Furthermore, several courts have held that because affirmative defenses are governed by Rule 8(c) — and thus are not Rule 12(b) defenses — Rule 12(g)(2) does not apply to them. See Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005) ("The requirement in 8(c) that a party set forth the affirmative defenses listed in that rule applies only to responsive 'pleadings,' not to motions. A motion to dismiss is not a pleading. Unless a court has ordered otherwise, separate motions to dismiss may be filed asserting different affirmative defenses."); Keeton v. Cox, No. 06-1094, 2010 U.S. Dist. LEXIS 12000, at *2-3 n. 1 (E.D. Cal. Feb. 10, 2010) ("Under Rule 12(g)(2), of the Federal Rules of Civil Procedure, a motion to dismiss based on defenses listed in rule 12(b) precludes further motions on any of those grounds. Claim and issue preclusion are not among those listed.") (Report and Recommendation by United States Magistrate Judge), adopted by 2010 U.S. Dist. LEXIS 27108 (E.D. Cal. Mar. 22, 2010); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (3d ed. 2004) ("Almost since its adoption, Rule 12(g) has been understood to require a party moving under Rule 12 before submitting a responsive pleading to consolidate all Rule 12 defenses and objections that are 'then available.'"). In any event, "[Rule] 12(g) does not preclude the filing of a second motion pursuant to Rule 12 where the defense or objection was not available at the time of the filing of the initial motion." Jewett v. IDT Corp., No. 04-1454, 2008 U.S. Dist. LEXIS 12335, at *6-7 (D.N.J. Feb. 19, 2008). We are satisfied that it was reasonable for Defendant to wait to raise its preclusion arguments until decisions and opinions had been filed in all four of the state-court actions. Moreover, because we are converting the instant motion to dismiss to one for summary judgment and providing the parties with the opportunity for further briefing, Plaintiffs will not be prejudiced by the Court's consideration of these arguments.

12

Hankin, 145 F. App'x 768, 771 (3d Cir. 2005) ("[A]n affirmative defense will serve as grounds for a Rule 12(b)(6) dismissal *only* if the basis for the defense is evident on the face of the complaint."). This rule applies to "any affirmative defense raised pursuant to Rule 8(c), including res judicata." Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997). But see M & M Stone Co. v. Pennsylvania, No. 09-3940, 2010 U.S. App. LEXIS 15666, at *13-14 (3d Cir. July 28, 2010) ("In the context of deciding a Rule 12(b)(6) motion that raises issue preclusion concerns, and where a plaintiff has not included the existence or substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication in order to determine whether issue preclusion bars that plaintiff's claims.").

Here, Plaintiffs' Complaint describes the entry of the confessed judgments; the ongoing foreclosure litigation; Plaintiffs' efforts to open the first confessed judgment and defend against the foreclosure actions; the denial of Plaintiffs' petition to open, apparently following a hearing on the matter; and Plaintiffs' appeal of the denial. (See Compl. ¶¶ 12, 212, 221, 224, 231-32, 250, 252, 258.) However, the majority of decisions and opinions by the Court of Common Pleas — which would provide the grounds for any preclusion defenses — were issued

13

after the filing of the federal Complaint and, indeed, after the filing of Defendant's motion to dismiss.  Therefore, it appears that while the Complaint provides notice of the potential for affirmative defenses based upon preclusion, it does not clearly establish the grounds for the defense.

Regardless, the Third Circuit has explained that, even though a district court may address res judicata issues on a motion to dismiss under the appropriate circumstances, "[w]hether claim preclusion applies is a delicate question often requiring factual comparisons and thus often is decided on a motion for summary judgment."  Brody, 145 F. App'x at 773.

At present, we are concerned by the almost total lack of argument devoted to the subject.  We have only a handful of sentences from the parties addressing these extremely complicated doctrines.  Indeed, during a status conference held on October 21, 2010, Plaintiffs' counsel made it clear that he had not understood the preclusion doctrine, as opposed to the Rooker-Feldman doctrine, to have been raised in the first place, let alone briefed properly.  Counsel appeared to request, therefore, that if the Court were of the opinion that preclusion had been properly raised — which the Court is, despite the paltry legal argument in support thereof — counsel be given the opportunity to address the subject.  This request comports with the procedural framework approved of by the Third Circuit.  When faced with an

14

affirmative defense that could not properly be resolved on a motion to dismiss, the Third Circuit stated:

> The district court could have properly pursued either of two procedures. It could have denied the motion without prejudice to renew in the form of a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Alternatively, the district court could have converted the Rule 12(b)(6) motion into a Rule 56 motion . . . thereby affording "all parties . . . reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Rycoline Products, Inc., 109 F.3d at 886-87.

We would benefit from the arguments of counsel on this subject as well as from further development of the record of the state-court proceedings. Therefore, as far as it concerns the preclusion doctrines, Defendant's Motion to Dismiss will be converted to a Rule 56 motion for summary judgment. We will reserve ruling on the remainder of Defendant's Rule 12(b)(6) arguments — as well as on Defendant's Motion to Strike — because the preclusion arguments could prove to be dispositive.

**IV. CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is in part converted to a motion for summary judgment in order to consider the impact of the preclusion doctrines. Ruling on the remainder of the Motion to Dismiss and on the Motion to Strike is reserved. An appropriate order follows.